UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DESHAWN A. BOYLAN,

                      Petitioner,              Case No. 2:19-cv-210

v.                                    Honorable Maarten Vermaat

NOAH NAGY,

                      Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF Nos. 20, 21.)

Petitioner Deshawn A. Boylan is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. On August 12, 2016, following a four-day jury trial in the Muskegon County Circuit Court, Petitioner was convicted of one count of felony murder in violation of Mich. Comp. Laws § 750.316(b). On September 26, 2016, the court sentenced Petitioner to life in prison without the possibility of parole.

On September 30, 2019, Petitioner filed his initial habeas corpus petition.[1] (ECF No. 1.) In an order (ECF No. 3) entered on November 14, 2019, the Court directed Petitioner to file an

_____

[1] The Court did not receive Petitioner's initial habeas corpus petition until October 22, 2019. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed

amended petition using the standard form. On December 9, 2019, Petitioner filed his amended

petition raising two grounds for relief, as follows:

I.   [The state court's decision was an] unreasonable application of *In re Winship*, and [a violation of] Petitioner's XIV Amendment Due Process Rights.

II.  [The state court's decision was an] unreasonable application of *Strickland v. Washington*, and a violation of Petitioner's VI and [X]IV Amendment Righ[t]s.

(Pet., ECF No. 5, PageID.222, 223.) Respondent asserts that Petitioner's grounds for relief are not

fully exhausted and lack merit. (ECF No. 10.) For the following reasons, the Court concludes that

Ground II sets forth a meritorious ground for federal habeas relief. The Court, therefore, will grant

Petitioner's petition for writ of habeas corpus with respect to Ground II.

<u>Discussion</u>

**I.   Factual Allegations**

The Michigan Court of Appeals described the events underlying Petitioner's felony murder

conviction as follows:

> In the early morning hours of June 26, 2014, Robert Gee shot and killed Jacob Rameau. The evening before, Rameau and his brother, Christopher Hotz, went to DJ's Pub and Grill in Muskegon. Hotz parked his car in the lot but left his windows rolled down and his keys inside. Rameau drove separately on a motorcycle and parked nearby. That same evening, a group of men, including [Petitioner] and Gee, decided to visit DJ's Pub. The driver of their party, Harry McBride, parked next to Hotz's vehicle in the parking lot.
>
> When [Petitioner's] group left, McBride, Gee, and two other men returned to McBride's car. [Petitioner] delayed, looking inside nearby vehicles. He entered Hotz's car, found the keys, started the engine, and pulled away from the bar. McBride did not want to follow [Petitioner], but testified that Gee pressured him to do so. By this time, Hotz and Rameau had exited the bar and saw [Petitioner]

---

his memorandum in support of his petition on September 30, 2019. (ECF No. 1-1, PageID.27.) The Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials).

driving away in Hotz's car. Rameau jumped on his motorcycle and took up chase while Hotz called 911 to report the theft.

[Petitioner], followed by McBride, followed by Rameau drove along at high speeds. Eventually, Rameau passed McBride and pulled alongside [Petitioner] who had stopped abruptly on a residential street. Gee pulled out a gun, leaned out the window, and fired several shots at Rameau. Rameau pulled away and McBride pulled alongside [Petitioner]. McBride heard [Petitioner] state that he had intended to "pop" Rameau before Gee started shooting.[] Gee then fired another shot in the motorcycle's direction.

Eventually, [Petitioner] abandoned the stolen car. He and Gee searched it, stole various items, and then wiped the vehicle to remove any fingerprints. A local resident found Rameau lying on her front yard next to the motorcycle. She called 911, but Rameau died before he could be transported to the hospital. The next day, [Petitioner], Gee, and two other men travelled to a pawn shop to sell the items they stole.

*People v. Boylan*, No. 335556, 2018 WL 1936182, at *1 (Mich. Ct. App. Apr. 24, 2018) (footnote omitted).

In the days that followed Rameau's death, police identified Petitioner, Gee, and McBride as suspects. Police also suspected Everett Glover and Steven Bailey, both of whom rode with McBride and Gee. By July of 2014, the State had charged Petitioner with unlawful driving away of an automobile (UDAA), in violation of Mich. Comp. Laws § 750.413. (ECF No. 11-2, PageID.300.) Petitioner pled guilty to that charge on October 24, 2014. (ECF No. 15-1.) During the plea hearing, the court noted that, pursuant to a *Cobbs*[2] agreement, it would "cap the minimum sentence at the middle of the guidelines." (*Id.*, PageID.1366.)

Petitioner appeared before the court for sentencing on the UDAA charge on December 1, 2014. (ECF No. 11-4.) During sentencing, the parties disputed the scoring on three Offense Variables (OVs): OV-1, OV-2, and OV-3. (*Id.*, PageID.314–323.) Those OVs relate to the use of a weapon (OV-1); the potential lethality of any weapon possessed or used (OV-2); and physical

---

[2] Under *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), a Michigan judge may agree to offer a predictable sentence in exchange for a defendant's guilty plea.

injury that resulted to any victims (OV-3). *See* Mich. Comp. Laws §§ 777.31–33. OV-1 and OV-2 direct that points should be assessed even if another offender used or possessed a weapon during the offense. *See id.* §§ 777.31(2)(b); 777.32(2). The sentencing court did not assess any points for OVs 1 and 2, stating, "I don't find this to be a multiple offender case." (ECF No. 11-4, PageID.323.) The court did, however, assess 100 points for OV-3, finding that Petitioner's offense resulted in the death of a victim. (*Id.*, PageID.320–321.) The court ultimately sentenced Petitioner to a minimum of 3 years, 2 months, with a maximum of 10 years' incarceration. (*Id.*, PageID.331.)

More than a year later, in early 2016, the State charged Petitioner with open murder.[3] (ECF No. 11-1, PageID.294.) The State based the open murder charge on a theory of felony murder. (ECF No. 11-7, PageID.479.) Specifically, the State premised the felony murder theory on a predicate felony of either larceny of a motor vehicle or larceny of property within the car (e.g., the items taken to the pawn shop). (*Id.*, PageID.480.) Jury selection began on August 9, 2016. (ECF No. 15-2.) Over the course of two days, the jury heard testimony from numerous witnesses, including law enforcement officials, Hotz, McBride, Glover, and Bailey. (Trial Tr. II & III, ECF Nos. 11-10, 11-11, 11-12.) The jury reached a guilty verdict on August 12, 2016. (Trial Tr. IV, ECF No. 11-13, PageID.1082.) Petitioner appeared before the trial court for sentencing on September 26, 2016. (ECF No. 11-14.)

Petitioner, with the assistance of counsel, subsequently filed a motion for an evidentiary hearing and a new trial, which the trial court denied. (ECF No. 11-16, PageID.1158–1182.) Petitioner, with the assistance of counsel, then directly appealed his conviction and sentence, raising the following grounds for relief: (1) the prosecution presented insufficient evidence to

---

[3] By that time, Gee had been convicted of first-degree murder for Rameau's death following a bench trial. *See Boylan*, 2018 WL 1936182, at *1 n.2.

establish that Petitioner was the factual and proximate cause of Rameau's death because Gee's decision to shoot was not foreseeable; (2) trial counsel rendered ineffective assistance by (a) being unprepared for trial, (b) failing to file a motion to quash the information on the basis that Petitioner's decision to unlawfully drive Hotz's car away did not foreseeably cause Rameau's death, (c) failing to file a motion to quash on the ground that the open murder charge violated the doctrine of res judicata and amounted to a piecemeal prosecution that violated due process, and (d) only meeting with Petitioner twice and failing to better explain plea offers; and (3) the trial court erred in several ways when it instructed the jury on the elements of felony murder and an aiding and abetting theory. The court of appeals noted that Petitioner's trial "was not perfect," but rejected all of Petitioner's arguments and affirmed his conviction and sentence. *See Boylan*, 2018 WL 1936182, at *1. Petitioner subsequently filed a *pro per* application for leave to appeal to the Michigan Supreme Court. (ECF No. 11-17, PageID.1276–1321.) The Michigan Supreme Court denied leave to appeal on December 21, 2018. (*Id.*, PageID.1353.) This § 2254 petition followed.

## II.     Exhaustion and Procedural Default

Respondent contends that Petitioner's grounds for relief appear to be unexhausted and procedurally defaulted. (ECF No. 10, PageID.265–266, 275 n.6.) There are two types of procedural default. First, procedural default can occur pursuant to state law. When a state law default prevents further consideration of a federal issue by the state, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). To determine whether

5

a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir. 2010).

Second, procedural default may occur if Petitioner failed to raise a federal issue in the state courts. Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan*, 526 U.S. at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–78 (1971). Failure to fairly present an issue to the state courts is a problem only if a state court remedy remains available for the petitioner to pursue. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available, the petitioner's failure to exhaust does not bar relief, but the claim may be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996).

If a petitioner procedurally defaulted his federal claim, the petitioner must demonstrate either (1) cause and prejudice—cause for his failure to comply with the state procedural rule (or fairly present the issue in the state courts) and actual prejudice flowing from the violation of federal law alleged in his claim—or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Hicks*, 377 F.3d at 551–52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536–37. A habeas petitioner asserting a claim of actual innocence must establish that,

6

in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## A.      Ground I

In support of his argument that Petitioner's first ground for relief is unexhausted, Respondent states:

> Here, in the Michigan Court of Appeals and Michigan Supreme Court, [Petitioner] asserted that the evidence was insufficient to convict him of first-degree felony murder premised on the lack of causation, foreseeability, and the fact that Gee was the person who actually inflicted the fatal injury on the victim. But now on habeas review, [Petitioner] appears to be raising a claim concerning the sufficiency of the evidence as to the predicate felony used to elevate the killing of the victim to first-degree felony murder and a related argument that the prosecutor "changed" the charged predicate felony.

(ECF No. 10, PageID.265–266.)

On appeal, Petitioner, through counsel, argued that there was insufficient evidence to support his felony murder conviction because "his actions were not the cause of the death of Jacob Rameau." (ECF No. 11-16, PageID.1209.) Petitioner contended that Gee's act of shooting at Rameau was not reasonably foreseeable, and that such an act "constitute[d] an intervening cause that broke the causal chain." (*Id.*, PageID.1214.) In his § 2254 petition, Petitioner appears to argue that the evidence supporting his felony murder conviction is insufficient because there was no evidence to suggest that Petitioner committed larceny, and that UDAA, which Petitioner pled guilty to, is not a form of larceny under Michigan law. (ECF No. 1-1, PageID.19.)

A "parsimonious reading of [a petitioner's] *pro se* [habeas petition is] contrary to [the] longstanding instruction that *pro se* filings must be 'liberally construed.'" *Simmons v. United States*, 142 S. Ct. 23, 24 (2021) (Sotomayor, J., respecting the denial of certiorari) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Although Petitioner's presentation of his ineffective assistance claim does not exactly mirror the claim as presented by counsel on direct appeal, any

7

ambiguity regarding the specificity of his claim is dispelled by the court of appeals' decision. While the court of appeals focused primarily on Petitioner's argument regarding causation, it did reference the fact that Petitioner stole Hotz's car and that Petitioner and Gee searched the stolen car for valuables. *Boylan*, 2018 WL 1936182, at *3–4. Moreover, the court of appeals addressed Petitioner's argument that no larceny occurred when considering his claim regarding errors in the jury instructions. *See id.* at *8.

It is well settled that the exhaustion doctrine does not preclude review of a federal claim when the state courts have actually reached the merits of the federal claim. *See Cohen v. Tate,* 779 F.2d 1181, 1185 (6th Cir.1985); *accord Ybarra v. McDaniel,* 656 F.3d 984, 991 (9th Cir.2011); *Alverson v. Workman,* 595 F.3d 1142, 1153 n. 3 (10th Cir.2010); *Walton v. Caspari,* 916 F.2d 1352, 1356–57 (8th Cir.1990). Thus, despite any deficiency in Petitioner's *pro se* presentation, this Court concludes that his sufficiency of the evidence argument was presented to and rejected by the court of appeals, thus satisfying the exhaustion requirement.

### B.    Ground II

Respondent argues that the ineffective assistance claim Petitioner raises in his habeas corpus petition appears to differ from that presented to the state courts. (ECF No. 10, PageID.275 n.6.) In his § 2254 petition, Petitioner contends that trial counsel rendered ineffective assistance by failing to "uncover[] the ultimate decision, previously made by the prosecutor, to only charge [Petitioner] with UDAA." (ECF No. 1-1, PageID.24.) Petitioner suggests that, at minimum, counsel should have filed a motion to quash on the basis that Petitioner did not act in concert with Gee and the others to cause Rameau's death. (*Id.*, PageID.23–24.) A liberal construction of Petitioner's § 2254 petition leads the Court to conclude that he is raising an argument that counsel was ineffective for failing to file a motion to quash premised upon res judicata or collateral estoppel

8

because of the previous finding, during Petitioner's sentencing for UDAA, that Petitioner did not act in concert with Gee and the others.

Again, although Petitioner's presentation of his ineffective assistance claim does not precisely mirror the claim presented by counsel on direct appeal, the court of appeals did consider and reject Petitioner's arguments that counsel was ineffective for failing to file a motion to quash on the grounds that Petitioner did not foreseeably cause Rameau's death and that his prosecution for felony murder violated the doctrine of res judicata. *See Boylan*, 2018 WL 1936182, at *4–5. Petitioner's claim was, therefore, expressly rejected by the court of appeals, thereby satisfying the exhaustion requirement. *See Cohen*, 779 F.2d at 1185.

## III.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

9

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

10

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.    Analysis

As noted *supra*, Ground II sets forth a meritorious ground and warrants a grant of habeas relief to Petitioner. The Court, therefore, focuses its analysis on that ground for relief below.

In Ground II, Petitioner contends that counsel rendered ineffective assistance by failing to file a motion to quash the information. He suggests that counsel should have based a motion to quash on the fact that prior to the State charging Petitioner with felony murder, the State had "investigated all the facts surrounding the death of Mr. Jacob Rameau and concluded that a Mr. Robert Gee, in concert with Harry McBride, Steven Bailey and Everrett Glover, were solely responsible for Mr. Rameau's death." (ECF No. 1-1, PageID.23.) As noted above, the Court has construed Petitioner's argument to be that counsel was ineffective for failing to file a motion to quash premised upon collateral estoppel because of the previous finding, during Petitioner's sentencing for UDAA, that Petitioner did not act in concert with Gee and the others.

A.     **Standard of Review**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

12

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo*, 562 U.S. at 122; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

With respect to Petitioner's ineffective assistance claim, the court of appeals set forth the following standard of review:

> "'Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise.'" *People v. Seals*, 285 Mich. App. 1, 17; 776 N.W.2d 314 (2009), quoting *People v. Solmonson*, 261 Mich. App. 657, 663; 683 N.W.2d 761 (2004). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v. Petri*, 279 Mich. App. 407, 411; 760 N.W.2d 882 (2008) (quotations omitted).
>
>> To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*People v. Lockett*, 295 Mich. App. 165, 187; 814 N.W.2d 295 (2012).]
>
> "[T]he defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v. Carbin*, 463 Mich. 590, 600; 623 N.W.2d 884 (2001).

*Boylan*, 2018 WL 1936182, at \*4. Although the court of appeals cited state court authority, the standard applied is identical to *Strickland*. Moreover, if one looks to *Carbin*, the source of the standard is identified as *Strickland*. *See Carbin*, 623 N.W.2d at 889. Thus, there is no question that the court of appeals applied the correct standard. The Court, therefore, will consider whether the court of appeals reasonably applied the standard to Petitioner's ineffective assistance claim.

### B. Merits of Petitioner's Claim

The Double Jeopardy Clause of the Fifth Amendment provides that no "person" may be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause also "embodies an interest in the 'preservation of the 'finality of judgments.'" *United States v. Inman*, 39 F.4th 357, 363 (6th Cir. 2002) (quoting *Yeager v. United States*, 557 U.S. 110, 118 (2009)). The Supreme Court, therefore, has recognized that the Double Jeopardy Clause "include[s] a component known as 'issue preclusion' or 'collateral estoppel.'" *Id.* Simply put, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1070).

To determine whether an issue is precluded from retrial, a court must:

examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

*Id.* (internal quotation marks omitted); *see also Schiro v. Farley*, 510 U.S. 222, 233 (1994). This test is "a demanding one." *Currier v. Virginia*, 138 S. Ct. 2144, 2150 (2018). The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Ashe*, 397 U.S. at 443 (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)). "Any test more technically restrictive would . . . amount to a rejection of the rule of collateral estoppel in criminal

proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Id.*

Equally important, factual findings at sentencing hearings may have preclusive effect if they are incorporated into a final judgment. *See United States v. Montes*, 976 F.2d 235, 239 (5th Cir. 1992). This issue is not clearly settled within the Sixth Circuit. *See United States v. Roberts*, 59 F. App'x 86, 87 (6th Cir. 2003) (noting that "[w]hat is unclear, both in the Sixth Circuit and in the other Circuits, is the question presented by this case: whether a defendant can invoke the doctrine defensively in regard to a determination made by a judge in a prior sentencing-particularly where that determination is legal and not factual"); *see also Kosinski v. C.I.R.*, 541 F.3d 671, 679 (6th Cir. 2008) (noting that the court "kn[e]w of no case . . . where a federal court has ascribed preclusive effect to a sentencing court's findings of fact").

At least two federal district courts have concluded that collateral estoppel applies to preclude relitigation of facts established during sentencing proceedings. In 1998, the United States District Court for the Western District of Virginia noted that "so long as the particular sentencing hearing otherwise meets the requirements for collateral estoppel, precedent supports the doctrine's application to preclude both the government and the defendant from relitigation of facts established at sentencing." *United States v. Plaster*, 16 F. Supp. 2d 667, 671 (W.D. Va. 1998). Applying collateral estoppel, the court concluded that the defendant could not be prosecuted for "false swearing" committed during a prior sentencing hearing because the judge during that sentencing had accepted the defendant's testimony on the fact dispute at issue. *Id.* at 667–68.

Six years later, the United States District Court for the Eastern District of Virginia considered a substantial issue of collateral estoppel and its application with respect to findings pursuant to the federal Sentencing Guidelines. *See generally United States v. Biheiri*, 341 F. Supp.

15

2d 593 (E.D. Va. 2004). *Biheiri* involved the second prosecution of the defendant that included allegations related to the funding of terrorists. *Id.* at 595. In the first prosecution, the defendant was "convicted of naturalization fraud, but the government fell short in its effort to impose on defendant either a terrorism-related sentencing enhancement pursuant to U.S.S.G. § 3A1.4, or an upward departure pursuant to U.S.S.G. § 5K2.0." *Id.* During that prosecution, the sentencing court concluded that the government "failed to show by a preponderance of the evidence that defendant made a false statement to federal agents in violation of 18 U.S.C. § 1001(a), when, in the course of that interview, he denied having social or business relationships" with individuals designated by the Department of State as Specially Designated Terrorists (SDTs). *See id.* at 597.

Subsequently, the defendant was indicted again, on two counts of making false statements in violation of 18 U.S.C. § 1001(a), based upon the denials noted above, and one count of willfully using a fraudulently procured passport. *See id.* The defendant moved to dismiss the indictment on grounds of vindictive and selective prosecution, double jeopardy, and collateral estoppel. *Id.* at 598. The court concluded that because the government had failed to prove that the defendant made a false statement during sentencing in his first prosecution, the government was collaterally estopped from prosecuting the defendant regarding that alleged false statement because that finding was "necessary and material" to the disposition of the government's request for an upward departure pursuant to § 5K2.0. *Id.* at 604.

With respect to the doctrine of collateral estoppel, the Michigan Court of Appeals has stated:

> The applicability of collateral estoppel is a question of law subject to de novo review on appeal. *People v. Trakhtenberg*, 493 Mich. 38, 47; 826 N.W.2d 136 (2012). The doctrine of collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the previous proceeding culminated in a valid and final judgment and the issue was actually and necessarily determined in that previous proceeding. *People v. Brown*, 279 Mich.

16

App. 116, 126; 755 N.W.2d 664 (2008). Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality. *Trakhtenberg*, 493 Mich. at 48. Prosecutors are considered the same party for purposes of collateral estoppel because prosecutors are "creatures of the state." *People v. Gates*, 434 Mich. 146, 156; 452 N.W.2d 627 (1990). In a criminal case, the original sentence imposed following a conviction is a final judgment. MCR 7.202(6)(b)(ii). In the subsequent action, the ultimate issue to be concluded must be the same as that involved in the first action. *People v. Schneider*, 171 Mich. App. 82, 86; 429 N.W.2d 845 (1988).[] To be actually litigated, the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issues in the first action. *Gates*, 434 Mich. at 156-157. The court reviews what has been pleaded and argued to determine if the issue was actually litigated. *Id.* at 156. To be necessarily determined in the first action, the issue in the subsequent action must have been essential to the first judgment. *Id.* at 158.

*People v. Beverly*, No. 344460, 2020 WL 746939, at *4 (Mich. Ct. App. Feb. 13, 2020) (footnote omitted). The court of appeals has approved the application of collateral estoppel to a prior determination of a defendant's habitual offender status. *See People v. Jackson*, No. 208666, 1998 WL 1989507, at *1 & n.1 (Mich. Ct. App. Oct. 27, 1998). As in the federal courts, the Michigan courts make factual findings at sentencing. *See People v. Lockridge*, 870 N.W.2d 502, 524 (Mich. 2015) ("Michigan's sentencing guidelines scheme allows judges to find by a preponderance of the evidence facts . . . ."). Notably, however, the parties have not cited, and the Court has not located, any case law suggesting that Michigan prohibits the application of collateral estoppel to preclude relitigation of facts established during sentencing proceedings.

With respect to Petitioner's ineffective assistance claim, the court of appeals stated:

Defendant also contends that counsel should have moved to quash on the ground that the charge violated the doctrine of res judicata and amounted to a piecemeal prosecution in violation of due process. Specifically, the prosecution initially charged defendant only of stealing Hotz's car. After defendant pleaded guilty to unlawfully driving away a vehicle, the prosecution charged defendant with murder.

Our Supreme Court has applied issue preclusion to criminal prosecutions. See *People v. Albers*, 137 Mich. 678, 685; 100 N.W. 908 (1904). In such cases, the criminal defendant may prevent the prosecution from relitigating a fact that was necessarily decided in his favor during a previous trial. *Id.*; see also *Yeager v.*

*United States*, 557 U.S. 110, 119; 129 S. Ct. 2360; 174 L. Ed. 2d 78 (2009) (recognizing that the Double Jeopardy Clause prohibits the government from relitigating any issue that was necessarily decided by the jury's acquittal in a prior trial). And this Court has recognized that res judicata may apply in the context of a criminal proceeding when "there has been an adjudication on the merits." *People v. George*, 114 Mich. App. 204, 210; 318 N.W.2d 666 (1982).

Defendant's plea-based conviction was a final adjudication on the merits and precludes retrial on the elements of unlawfully driving away a motor vehicle. MCL 750.413 proscribes this offense as follows: "Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony . . . ." However, the offense "is not a larceny because it does not require an intent to permanently deprive a victim of property." *People v. Hendricks*, 200 Mich. App. 68, 71; 503 N.W.2d 689 (1993). Larceny requires proof that the defendant intended to "deprive the owner of" the stolen property. *People v. March*, 499 Mich. 389, 401; 886 N.W.2d 396 (2016). By accepting defendant's guilty plea to unlawfully driving away a motor vehicle, the court was not required to consider whether defendant intended to permanently deprive Hotz of his property and therefore did not find that defendant had not committed a larceny. Accordingly, defendant's trial for felony murder based on the underlying charge of larceny was not precluded on res judicata grounds.

Moreover, the doctrine of res judicata does not preclude piecemeal prosecution. The "doctrine of res judicata was judicially created in order to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Pierson Sand & Gravel, Inc. v. Keeler Brass Co.*, 460 Mich. 372, 380; 596 N.W.2d 153 (1999) (quotation marks and citations omitted). The purpose of the doctrine is to promote fairness. *Id.* at 383. However, it cannot be applied to subvert the intent of the Legislature. *Bennett v. Mackinac Bridge Auth.*, 289 Mich. App. 616, 630; 808 N.W.2d 471 (2010). And the Legislature has granted prosecutors broad discretion "to investigate criminal wrongdoing, determine which applicable charges a defendant should face, and initiate and conduct criminal proceedings." *Fieger v. Cox*, 274 Mich. App. 449, 466; 734 N.W.2d 602 (2007). Additionally, our Supreme Court has not applied res judicata broadly in the criminal context; instead, it has limited it to facts and claims that were necessarily decided in the first litigation. *Albers*, 137 Mich. at 685; see also *People v. Sharp*, 9 Mich. App. 34, 39–40; 155 N.W.2d 719 (1967) (applying res judicata and holding that the trial court erred when it allowed the question of first-degree murder to go to the jury after the defendant's conviction of assault with the intent to murder because the most severe charge of which the defendant could have been found guilty after the previous conviction was manslaughter). Given the state of the law, defense counsel was not ineffective in failing to seek dismissal on this ground.

*Boylan*, 2018 WL 1936182, at *5.

Because Petitioner pleaded guilty to UDAA, he could not benefit from the preclusive effect from any findings on the elements of that offense. However, the Michigan Court of Appeals failed to discuss the one phase of Petitioner's UDAA proceedings where factual findings could have been made in his favor—his sentencing hearing. As noted above, at sentencing, the parties disputed the scoring of OV-1 (use of a weapon), OV-2 (potential lethality of any weapon possessed or used), and OV-3 (physical injury to any victim). (ECF No. 11-4, PageID.314–323.) OV-1 and OV-2 direct that points should be assessed even if another offender used or possessed a weapon during the offense.

At his UDAA sentencing, Petitioner's counsel argued that Petitioner was not charged as a co-defendant to the murder or with "having the gun or being a participant in that arena of action" and, therefore, could not "be considered as having a weapon or causing any sort of injury or having a lethal weapon." (*Id.* at 319.) The sentencing court disagreed with counsel regarding her assessment of OV-3, finding that Petitioner "put into play a series of events that culminated in the death of an individual." (*Id.* at 320.) Based on that finding, the court assessed 100 points for OV-3. (*Id.*, PageID.321.) The court then asked the prosecution to respond to counsel's position that OV-1 and OV-2 only apply when co-defendants are involved. In response, the prosecutor argued that "the statutory language is multiple offender cases; it is not co-defendants." (*Id.*) The prosecutor averred that OV-1 and OV-2 should be scored because the fact "that these men have not been charged directly as co-defendants under one case number does not negate the fact that this is multiple offenders within the same set of facts." (*Id.*)

Trial counsel then argued that in a multiple offender case, "it is required that the multiple offenders have an expectation about the ultimate consequence of the criminal action." (*Id.*, PageID.322.) Counsel argued that "there [was] no indication that [Petitioner] knew about this gun

or knew that anyone possessed a weapon in this particular case." (*Id.*) The prosecutor rebutted that statement, arguing that the parties were not asking the court to decide whether Petitioner aided and abetted in the murder. (*Id.*, PageID.323.) Ultimately, the sentencing court stated, "I don't find this to be a multiple offender case," and did not score OV-1 and OV-2. (*Id.*)

"An ineffective assistance of counsel claim presents a mixed question of law and fact, for which . . . the state-court . . . determination[] [is] subject to *de novo* review." *Groseclose v. Bell*, 130 F.3d 1161, 1164 (6th Cir. 1997). As noted *supra*, the Michigan Court of Appeals wholly failed to discuss findings made at Petitioner's UDAA sentencing hearing when considering his ineffective assistance claim related to counsel's failure to file a motion to quash based upon collateral estoppel. While state court factual findings are generally presumed to be correct, this Court will not defer to the court of appeals' determination regarding Petitioner's claim because of the failure to consider his UDAA sentencing and the factual findings made at that hearing.

The prosecution's theory of the felony murder charge wholly relied on the presumption of Petitioner being aware of Gee, McBride, and the others in the chase vehicle. As noted above, however, during Petitioner's UDAA sentencing, the sentencing court specifically found that this was not a multiple offender case after substantial argument by the parties. The court of appeals' opinion suggests that *Albers* likely would have precluded relitigation of whether Gee and the others in the "chase" vehicle acted with (i.e., co-offended with) Petitioner to the extent that Petitioner stole the vehicle. *See Boylan*, 2018 WL 1936182, at *5 (citing *Albers* for the proposition that the Michigan Supreme Court has limited the application of res judicata to "facts and claims that were necessarily decided in the first litigation"). Factual determinations made at sentencing must be supported by a preponderance of the evidence. *See People v. Hardy*, 494 Mich. 430, 438, 835 N.W.2d 340, 344 (2013). If the State could not meet the preponderance of the evidence standard

at Petitioner's UDAA sentencing, and the sentencing court's finding that this was not a multiple offender case precludes relitigation of the issue, it is difficult to discern how the State would be able to satisfy the reasonable doubt standard at Petitioner's felony murder trial.[4]

The Court recognizes that when considering a claim of ineffective assistance, it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. However, in Petitioner's case, the Court cannot conceive how counsel's failure to file a motion to quash based upon collateral estoppel was sound strategy. If, as appears to be the case, *Albers* would have precluded relitigation of whether Gee and the others acted with Petitioner, it is likely that a motion to quash based upon collateral estoppel would have been granted. Counsel's failure to file such a motion clearly prejudiced Petitioner, as there is a reasonable likelihood that the felony murder charge would have been dismissed if collateral estoppel applied and a motion to quash was granted.

The Court's *de novo* review of Petitioner's ineffective assistance claim leads to a conclusion that the court of appeals' rejection of his claim was an unreasonable application of *Strickland*. The court of appeals wholly ignored the factual findings made at Petitioner's UDAA sentencing and failed to consider both the preclusive effect of such findings and whether a motion

---

[4] This becomes even more apparent when one considers the numerous defects identified by the court of appeals in the jury instructions given during Petitioner's felony murder trial. For example, the court of appeals noted that the jury instruction regarding the elements of felony murder was "awkwardly worded." *Boylan*, 2018 WL 1936182, at *7. Moreover, the instruction on the third element "[did] appear to allow the jury to find [Petitioner] guilty of felony murder if Gee murdered Rameau during the commission of any larceny, even if it found that [Petitioner] did not commit, attempt to commit, or help commit a larceny." *Id.* The court of appeals also noted that the trial court "should have more clearly instructed the jury that [Petitioner] must have intended the commission of felony murder or had knowledge that Gee intended to commit felony murder" *Id.* at *9. Given these errors, it is possible that Petitioner could have been acquitted of felony murder if collateral estoppel precluded relitigation of whether Gee and the others acted with Petitioner.

to quash premised upon collateral estoppel would have succeeded. Petitioner, therefore, has presented the rare case where habeas relief is warranted, and the Court will grant his § 2254 petition with respect to Ground II.

### <u>Conclusion</u>

For the foregoing reasons, the Court concludes that trial counsel was ineffective for failing to file a motion to quash arguing that, under a theory of collateral estoppel, the UDAA sentencing court's prior determination that Petitioner did not act in concert with others precluded relitigation of that fact during Petitioner's prosecution for felony murder. The Court, therefore, will enter a judgment that grants Petitioner's § 2254 petition with respect to Ground II and directs that Petitioner's conviction and sentence for first-degree felony murder[5] be vacated if the State does not initiate proceedings to retry Petitioner on that charge within 90 days.[6]

Dated:     February 14, 2023                              /s/ *Maarten Vermaat*

                                                          Maarten Vermaat
                                                          United States Magistrate Judge

---

[5] The Court's grant of habeas relief does not affect Petitioner's conviction and sentence for UDAA.

[6] The Court's grant of relief on Ground II renders Ground I moot.