UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DESHAWN A. BOYLAN,

        Petitioner,         Case No. 2:19-cv-210

v.                                    Honorable Maarten Vermaat

NOAH NAGY,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF Nos. 20, 21.)

Petitioner Deshawn A. Boylan is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. On August 12, 2016, following a four-day jury trial in the Muskegon County Circuit Court, Petitioner was convicted of one count of felony murder in violation of Mich. Comp. Laws § 750.316(b). On September 26, 2016, the court sentenced Petitioner to life in prison without the possibility of parole.

On September 30, 2019, Petitioner filed his initial habeas corpus petition. (ECF No. 1.) In an order (ECF No. 3) entered on November 14, 2019, the Court directed Petitioner to file an amended petition using the standard form. On December 9, 2019, Petitioner filed his amended petition raising two grounds for relief, as follows:

> I. [The state court's decision was an] unreasonable application of *In re Winship*, and [a violation of] Petitioner's XIV Amendment Due Process Rights.
>
> II. [The state court's decision was an] unreasonable application of *Strickland v. Washington*, and a violation of Petitioner's VI and [X]IV Amendment Righ[t]s.

(Pet., ECF No. 5, PageID.222, 223.) Respondent asserted that Petitioner's grounds for relief were not fully exhausted and lacked merit. (ECF No. 10.)

In an opinion and judgment (ECF Nos. 29, 30) entered on February 14, 2023, the Court concluded that Petitioner's grounds for relief were exhausted, and that Ground II set forth a meritorious ground for habeas relief. The Court granted Petitioner's § 2254 petition with respect to Ground II and ordered that his conviction and sentence for first-degree felony murder be vacated if the State did not initiate proceedings to retry Petitioner on that charge within 90 days. The Court did not address the merits of Ground I given the grant of relief on Ground II.

Respondent subsequently appealed. (ECF No. 31.) In an opinion entered on June 20, 2024, the United States Court of Appeals for the Sixth Circuit vacated this Court's order granting habeas relief. (ECF No. 37.) The Sixth Circuit remanded the matter for "further proceedings consistent with [its] opinion." (*Id.*, PageID.1658.)

The Sixth Circuit's mandate issued on July 12, 2024. (ECF No. 38.) Accordingly, this matter is now before the Court for the further proceedings contemplated by the Sixth Circuit—namely, the resolution of Petitioner's remaining ground for relief. For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

**Discussion**

I.    **Factual Allegations**

The Michigan Court of Appeals described the events underlying Petitioner's felony murder conviction as follows:

> In the early morning hours of June 26, 2014, Robert Gee shot and killed Jacob Rameau. The evening before, Rameau and his brother, Christopher Hotz, went to DJ's Pub and Grill in Muskegon. Hotz parked his car in the lot but left his windows rolled down and his keys inside. Rameau drove separately on a motorcycle and parked nearby. That same evening, a group of men, including [Petitioner] and Gee, decided to visit DJ's Pub. The driver of their party, Harry McBride, parked next to Hotz's vehicle in the parking lot.
>
> When [Petitioner's] group left, McBride, Gee, and two other men returned to McBride's car. [Petitioner] delayed, looking inside nearby vehicles. He entered Hotz's car, found the keys, started the engine, and pulled away from the bar. McBride did not want to follow [Petitioner], but testified that Gee pressured him to do so. By this time, Hotz and Rameau had exited the bar and saw [Petitioner] driving away in Hotz's car. Rameau jumped on his motorcycle and took up chase while Hotz called 911 to report the theft.
>
> [Petitioner], followed by McBride, followed by Rameau drove along at high speeds. Eventually, Rameau passed McBride and pulled alongside [Petitioner] who had stopped abruptly on a residential street. Gee pulled out a gun, leaned out the window, and fired several shots at Rameau. Rameau pulled away and McBride pulled alongside [Petitioner]. McBride heard [Petitioner] state that he had intended to "pop" Rameau before Gee started shooting.[] Gee then fired another shot in the motorcycle's direction.
>
> Eventually, [Petitioner] abandoned the stolen car. He and Gee searched it, stole various items, and then wiped the vehicle to remove any fingerprints. A local resident found Rameau lying on her front yard next to the motorcycle. She called 911, but Rameau died before he could be transported to the hospital. The next day, [Petitioner], Gee, and two other men travelled to a pawn shop to sell the items they stole.

*People v. Boylan*, No. 335556, 2018 WL 1936182, at *1 (Mich. Ct. App. Apr. 24, 2018) (footnote omitted).

In the days that followed Rameau's death, police identified Petitioner, Gee, and McBride as suspects. Police also suspected Everett Glover and Steven Bailey, both of whom rode with

McBride and Gee. By July of 2014, the State had charged Petitioner with unlawful driving away of an automobile (UDAA), in violation of Mich. Comp. Laws § 750.413. (ECF No. 11-2, PageID.300.) Petitioner pled guilty to that charge on October 24, 2014. (ECF No. 15-1.) During the plea hearing, the court noted that, pursuant to a *Cobbs*[1] agreement, it would "cap the minimum sentence at the middle of the guidelines." (*Id.*, PageID.1366.)

Petitioner appeared before the court for sentencing on the UDAA charge on December 1, 2014. (ECF No. 11-4.) During sentencing, the parties disputed the scoring on three Offense Variables (OVs): OV-1, OV-2, and OV-3. (*Id.*, PageID.314–323.) Those OVs relate to the use of a weapon (OV-1); the potential lethality of any weapon possessed or used (OV-2); and physical injury that resulted to any victims (OV-3). *See* Mich. Comp. Laws §§ 777.31–33. OV-1 and OV-2 direct that points should be assessed even if another offender used or possessed a weapon during the offense. *See id.* §§ 777.31(2)(b); 777.32(2). The sentencing court did not assess any points for OVs 1 and 2, stating, "I don't find this to be a multiple offender case." (ECF No. 11-4, PageID.323.) The court did, however, assess 100 points for OV-3, finding that Petitioner's offense resulted in the death of a victim. (*Id.*, PageID.320–321.) The court ultimately sentenced Petitioner to a minimum of 3 years, 2 months, with a maximum of 10 years' incarceration. (*Id.*, PageID.331.)

More than a year later, in early 2016, the State charged Petitioner with open murder.[2] (ECF No. 11-1, PageID.294.) The State based the open murder charge on a theory of felony murder. (ECF No. 11-7, PageID.479.) Specifically, the State premised the felony murder theory on a predicate felony of either larceny of a motor vehicle or larceny of property within the car (e.g., the

---

[1] Under *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), a Michigan judge may agree to offer a predictable sentence in exchange for a defendant's guilty plea.

[2] By that time, Gee had been convicted of first-degree murder for Rameau's death following a bench trial. *See Boylan*, 2018 WL 1936182, at *1 n.2.

4

items taken to the pawn shop). (*Id.*, PageID.480.) Jury selection began on August 9, 2016. (ECF No. 15-2.) Over the course of two days, the jury heard testimony from numerous witnesses, including law enforcement officials, Hotz, McBride, Glover, and Bailey. (Trial Tr. II & III, ECF Nos. 11-10, 11-11, 11-12.) The jury reached a guilty verdict on August 12, 2016. (Trial Tr. IV, ECF No. 11-13, PageID.1082.) Petitioner appeared before the trial court for sentencing on September 26, 2016. (ECF No. 11-14.)

Petitioner, with the assistance of counsel, subsequently filed a motion for an evidentiary hearing and a new trial, which the trial court denied. (ECF No. 11-16, PageID.1158–1182.) Petitioner, with the assistance of counsel, then directly appealed his conviction and sentence, raising the following grounds for relief: (1) the prosecution presented insufficient evidence to establish that Petitioner was the factual and proximate cause of Rameau's death because Gee's decision to shoot was not foreseeable; (2) trial counsel rendered ineffective assistance by (a) being unprepared for trial, (b) failing to file a motion to quash the information on the basis that Petitioner's decision to unlawfully drive Hotz's car away did not foreseeably cause Rameau's death, (c) failing to file a motion to quash on the ground that the open murder charge violated the doctrine of res judicata and amounted to a piecemeal prosecution that violated due process, and (d) only meeting with Petitioner twice and failing to better explain plea offers; and (3) the trial court erred in several ways when it instructed the jury on the elements of felony murder and an aiding and abetting theory. The court of appeals noted that Petitioner's trial "was not perfect," but rejected all of Petitioner's arguments and affirmed his conviction and sentence. *See Boylan*, 2018 WL 1936182, at *1. Petitioner subsequently filed a *pro per* application for leave to appeal to the Michigan Supreme Court. (ECF No. 11-17, PageID.1276–1321.) The Michigan Supreme Court denied leave to appeal on December 21, 2018. (*Id.*, PageID.1353.)

5

This § 2254 petition followed. In the Court's February 14, 2023, opinion and judgment, the Court initially granted habeas relief with respect to Ground II. (ECF Nos. 29, 30.) In Ground II, Petitioner argued that counsel rendered ineffective assistance by failing to file a motion to quash the information. Petitioner suggested that counsel should have based such a motion on the fact that, prior to the State charging Petitioner with felony murder, the State had "investigated all the facts surrounding the death of Mr. Jacob Rameau and concluded that a Mr. Robert Gee, in concert with Harry McBride, Steven Bailey[,[ and Everrett Glover, were solely responsible for Mr. Rameau's death." (ECF No. 1-1, PageID.23.) The Court construed Petitioner's argument to be that counsel was ineffective for failing to file a motion to quash premised upon collateral estoppel because of the previous finding, during Petitioner's sentencing for UDAA, that Petitioner did not act in concert with Gee and the others.

Respondent appealed this Court's decision to the Sixth Circuit. The Sixth Circuit disagreed that habeas relief was warranted, concluding that Petitioner had not demonstrated that the state court's "decision involved an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984)." (ECF No. 37, PageID.1651.) The Sixth Circuit noted that counsel was not objectively reasonable for failing to argue collateral estoppel because "until [this Court's] decision in 2023, no one had identified [Petitioner's] prior sentencing finding as potentially preclusive under Michigan law." (*Id.*, PageID.1655.) The Sixth Circuit further concluded that "the finding that the UDAA offense was not a 'multiple offender case' was not an ultimate fact essential to the judgment—and could not have had preclusive effect." (*Id.*, PageID.1657.) The Sixth Circuit vacated the grant of habeas relief and remanded the matter to this Court for further proceedings.

## II.   AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685,

6

693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

7

decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563

8

U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Analysis

#### A. Ground II—Ineffective Assistance of Counsel

The Court has construed Ground II to assert that counsel was ineffective for failing to file a motion to quash premised upon collateral estoppel because of the previous finding, during Petitioner's sentencing for UDAA, that Petitioner did not act in concert with Gee and the others. As thoroughly discussed above, the Court initially granted habeas relief on this ground, and the Sixth Circuit vacated that grant. For the reasons given by the Sixth Circuit in its opinion (ECF no. 37), Petitioner is not entitled to relief with respect to habeas ground II.

#### B. Ground I—Sufficiency of the Evidence

As his first ground for relief, Petitioner argues that the state court's decision was an "unreasonable application of *In re Winship*, and [a violation of] Petitioner's XIV Amendment Due Process Rights." (Pet., ECF No. 5, PageID.222.) Specifically, Petitioner argues that the evidence supporting his felony murder conviction was insufficient because the State presented no evidence to suggest that Petitioner committed larceny, and that UDAA, which Petitioner pled guilty to, is

9

not a form of larceny under Michigan law. (ECF No. 1-1, PageID.19.) Petitioner suggests that because the prosecutor initially chose to only charge Petitioner with UDAA, the prosecutor essentially concluded that was the only crime that Petitioner committed on June 26, 2014.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable

hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

On appeal, Petitioner, through counsel, argued that there was insufficient evidence to support his felony murder conviction because "his actions were not the cause of the death of Jacob Rameau." (ECF No. 11-16, PageID.1209.) Petitioner contended that Gee's act of shooting at Rameau was not reasonably foreseeable, and that such an act "constitute[d] an intervening cause that broke the causal chain." (*Id.*, PageID.1214.)

The court of appeals rejected Petitioner's argument, first applying the following standard for reviewing Petitioner's claim:

> We review de novo a challenge to the sufficiency of the evidence, examining the "record evidence . . . in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v. Roper*, 286 Mich. App. 77, 83; 777 N.W.2d 483 (2009). We must resolve all conflicts in the evidence in favor of the prosecution. *People v. Wilkens*, 267 Mich. App. 728, 738; 705 N.W.2d 728 (2005). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *Id.*

*Boylan*, 2018 WL 1936182, at *1. Although the court of appeals cited state authority as the source of the standard, it is identical to the *Jackson* standard set forth above.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

11

*Williams v. Taylor*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of regarding Petitioner's sufficiency of the evidence challenge is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

After setting forth the standard, the court of appeals noted the elements of felony murder, emphasizing that "there must be a sufficient relationship between the homicide and the predicate felony to establish that the homicide was 'incident to the felony and associated with it as one of its hazards.'" *Boylan*, 2018 WL 1936182, at *2. The court of appeals also noted that a "jury could find [Petitioner] guilty of felony murder despite [the fact] that he did not inflict the fatal injury." *Id.* The court of appeals then applied the *Jackson* standard as follows to conclude that the prosecution had introduced sufficient evidence to convict Petitioner of felony murder:

> The prosecution presented evidence that [Petitioner] left DJ's pub with Gee and looked inside parked vehicles. Surveillance footage showed [Petitioner] entering Hotz's car. [Petitioner's] friends testified that [Petitioner] boasted to Gee when he

12

found Hotz's keys. The testimony suggested that [Petitioner] formed the intent to steal Hotz's car at that moment and that his companions were aware of what he was doing. McBride also testified that Gee cajoled him into following [Petitioner] as he drove away. The jury could infer that [Petitioner] and Gee were working in concert or at least had some understanding that Gee would follow [Petitioner]. *See People v. Hardiman*, 466 Mich. 417, 428; 646 N.W.2d 158 (2002) (stating that, if evidence is relevant and admissible, it does not matter that it gives rise to multiple inferences or that the inferences give rise to further inferences).

The surveillance footage revealed that Hotz and Rameau caught [Petitioner] in the act. The jury could infer from that evidence that [Petitioner] then knew the jig was up. At a minimum, the evidence regarding the ensuing chase established that [Petitioner] would have been aware that he was being followed when Rameau caught up with him while driving his motorcycle at a high rate of speed. McBride caught up to [Petitioner] at the intersection when the motorcyclist passed him and proceeded through the light in hot pursuit of [Petitioner]. The chase scenario from that point on suggested that [Petitioner] was trying to lose Rameau. The jury could also find that [Petitioner] knew that Gee and his companions were following right behind.

The testimony showed that [Petitioner] sped off down Hackley Street at a high rate of speed and that Rameau was undeterred. Rameau passed other cars and proceeded through the light after [Petitioner]. [Petitioner] then turned onto Jefferson and stopped rather abruptly, within a few houses of the corner. The jury could infer that [Petitioner] pulled over because he intended to confront Rameau or wanted to give his companions time to catch up and confront him.

McBride and another man in McBride's car, Everett Glover, both testified that they knew Gee had a gun. Glover also testified that he saw [Petitioner] with a gun earlier in the day. Glover's testimony suggested that it was common knowledge among those who knew Gee that he carried a gun. If Gee's friends and associates—McBride and Glover—knew that he carried a gun, a reasonable jury could infer that Gee's brother-in-law, [Petitioner], also possessed this knowledge. Accordingly, the jury could infer that [Petitioner] pulled over to enable Gee to catch up and assist him against his pursuer. When Gee arrived, he did just that—he pulled his gun and fired at Rameau.

Even if [Petitioner] did not know that Gee had a gun before stealing the car, he would have realized that Gee shot at Rameau. If [Petitioner] did not intend to confront Rameau or did not agree with Gee's actions, he had every opportunity to express his disagreement when McBride pulled up next to him after Gee fired the first shots. [Petitioner] could have abandoned the stolen car then and fled on foot, he could have told Gee to let Rameau go, he could have expressed anger at the shooting, or done any number of things to communicate that he wanted no part in Rameau's attack. Instead, [Petitioner] indicated that he personally was going to "pop" Rameau. McBride then continued down the street, and Gee shot at Rameau again. Given the pathologist's testimony about Rameau's injuries, a reasonable jury

13

> could find that Gee's final shot was fatal, a shot fired after [Petitioner] told Gee that he too had wanted to "pop" him.
>
> [Petitioner] proceeded to speed past McBride, and McBride followed. [Petitioner] eventually found a place to jump ship, and Gee helped him search the stolen car for valuables. Again, there was no evidence that [Petitioner] demurred. Instead, he and Gee continued to act in concert to complete the theft and get away. From the totality of this evidence, a reasonable jury could infer that [Petitioner] and Gee acted in concert to take the car and anything within it of value from the very start.
>
> The evidence showed that [Petitioner's] theft of Hotz's car led directly and foreseeably to Rameau's murder. A car thief generally knows that there is a risk that a witness to the theft or a police officer may pursue him and that the pursuit itself places the pursuer at risk of harm. In this case, there was also evidence that [Petitioner] knew his companions had followed him and knew that Gee was armed. A reasonable jury could infer that [Petitioner] pulled over to orchestrate a confrontation with Rameau and ensure his escape. Given the testimony that [Petitioner] and Gee both had guns, it was foreseeable that one or both men would use their weapons against anyone who posed a threat to their escape. Consequently, Gee's decision to fire at Rameau was a natural and foreseeable consequence of the chain of events that [Petitioner] set in motion when he stole Hotz's car, fled from Rameau, and then stopped to confront Rameau. There was no unforeseen break in the causal chain relieving [Petitioner] of responsibility and we may not interfere with the jury's conviction.

*Boylan*, 2018 WL 1936182, at *3–4.

In his § 2254 petition, Petitioner now asserts that there was insufficient evidence to convict him of felony murder because he was "never charged as a codefendant in Mr. Gee's case." (ECF No. 1-1, PageID.18.) According to Petitioner, he was "not depicted in the [p]awn [s]hop video in connection with the stolen item from Mr. Hotz's car." (*Id.*, PageID.19.) He suggests that "[t]he only evidence to support [the State's] theory of larceny was the speaker box evidence that unequivocally showed Gee and Bailey, not Petitioner, in possession of that item, where they successfully pawned the item." (*Id.*, PageID.20.) He also contends that the only direct evidence the State introduced was the surveillance video, and that the "remaining circumstantial evidence consists of testimony from McBride, Bailey, and Glover," all of whom "had been convicted of

14

perjury, in connection with this incident, when they were charged with the murder of Mr. Rameau." (*Id.*)

To prevail on his sufficiency claim now, Petitioner must show that the inferences urged by the appellate court are unreasonable. Here, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not. He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

In *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), the Supreme Court provided some guidance with respect to the distinction between a reasonable inference and mere speculation. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an earth-shattering revelation, and it is not a particularly onerous burden. The Court went so far as to say that "the only question under *Jackson* is whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

As an initial matter, Petitioner's suggestion that there was insufficient evidence because the prosecution presented perjured testimony from McBride, Bailey, and Glover lacks merit. The Fourteenth Amendment's right to due process prohibits a state from knowingly and deliberately using perjured evidence to obtain a conviction. *See Napue v. Illinois*, 360 U.S. 264, 260 (1959). The Supreme Court repeatedly has recognized that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Presentation of perjured testimony, without more, however, does not rise to the level of a constitutional violation. *See Briscoe v. LaHue*, 460 U.S. 325, 327 (1983). Rather,

15

> [t]he knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).

Petitioner has failed to provide any support for his claim that the three individuals noted above presented false testimony, and that the prosecution knew it was false. Moreover, Petitioner is mistaken that the three (McBride, Bailey, and Glover) were convicted of perjury. Public records indicate that Glover was charged with lying to a peace officer in the course of a violent crime investigation, but that the charge was subsequently *nolle prossed*. *See* Register of Actions, *People v. Glover*, No. 2014-0000065207-FH (Muskegon Cnty. Cir. Ct.), *available at* https://micourt.courts.michigan.gov/case-search/court/C14 (type "Glover" for "Last Name or Business," type "Everett" for "First Name," select "Search," then select the link for No. 2014-0000065207-FH) (last visited Aug. 16, 2024). McBride pleaded guilty to lying to a peace officer in the course of a violent crime investigation. *See* Register of Actions, *People v. McBride*, No. 2014-0000065094-FH (Muskegon Cnty. Cir. Ct.), *available at* https://micourt.courts.michigan.gov/case-search/court/C14 (type "McBride" for "Last Name or Business," type "Harry" for "First Name," select "Search," then select the link for No. 2014-0000065094-FH) (last visited Aug. 16, 2024). Finally, Bailey was initially charged with tampering with evidence, but that charge was *nolle prossed*. *See* Register of Actions, *People v. Bailey*, No. 2014-0000065116-FH (Muskegon Cnty. Cir. Ct.), *available at* https://micourt.courts.michigan.gov/case-search/court/C14 (type "Bailey" for "Last Name or

Business," type "Steven" for "First Name," type "Lynn" for "Middle Name," select "Search," then select the link for No. 2014-0000065116-FH) (last visited Aug. 16, 2024).

In any event, Petitioner's arguments concerning the credibility of the testimony given by McBride, Glover, and Bailey essentially invite this Court to reweigh the witnesses' credibility and resolve all conflicts and make all inferences in his favor. Under *Jackson*, a habeas court is not required to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. Instead, the Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are reasonable. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Petitioner's invitation turns the *Jackson* standard on its head.

Moreover, Petitioner does not explain, and the Court does not discern, how the fact that he was not initially charged as a co-defendant in Mr. Gee's case has any bearing on whether the State presented sufficient evidence to support a felony murder conviction in the instant case. In any event, upon review of the record, the Court concludes that the State presented sufficient evidence to support a conclusion that Petitioner committed larceny, the underlying felony for purposes of the felony murder charge. In Michigan, "[t]he elements of larceny are (1) a trespassory taking and the carrying away (2) of the personal property of another (3) with the intent to steal that property." *People v. Riddle*, Nos. 363403, 367187, 2024 WL 3548783, at *4 (Mich. Ct. App. July 25, 2024) (citing *People v. March*, 499 Mich. 389, 401; 886 N.W.2d 396 (2012)). As the court of appeals noted, the State presented evidence that Petitioner and Gee searched Hotz's stolen car for valuables. *See Boylan*, 2018 WL 1936182, at *3. Petitioner and Gee took various items from the

17

car and then wiped it down to remove fingerprints. *See id.* at *1. Petitioner offers no clear and convincing evidence to refute those conclusions. Thus, even if Petitioner was not involved in the actual pawning of the speaker box stolen from Hotz's car, the fact remains that the State presented sufficient evidence from which the jury could conclude that he committed larceny of Hotz's property from the car.

In sum, Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support Petitioner's felony murder conviction is contrary to, or an unreasonable application of, clearly established federal law. Moreover, any further arguments regarding the sufficiency of the evidence lack merit. Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

18

*Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter an order and judgment denying the § 2254 petition as well as a certificate of appealability.

Dated:   September 10, 2024                                /s/ *Maarten Vermaat*
                                                                                        Maarten Vermaat
                                                                                        United States Magistrate Judge